# IN THE UNITED STATES DISTIRCT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MARK A. CHRISTESON, | ) |
| | ) |
|    Petitioner, | ) |
| | ) |
|    v. | )   No. 4:04-CV-8004-DW |
| | ) |
| DONALD P. ROPER, WARDEN, | ) |
| POTOSI CORRECTIONAL CENTER | ) |
| | ) |
|    Respondent. | ) |

## SUGGESTIONS IN OPPOSITION TO
## MOTION TO SUBSTITUTE

Because Christeson does not show a legitimate basis to change Christenson's counsel less than a week before his execution date, the Court should deny the fourth motion to substitute.

**Procedural History**

This Court granted Christeson's motion to appoint counsel on July 2, 2004 (04-8004 Doc.5). Original counsel filed the petition for writ of habeas corpus on August 5, 2005 (Doc.10). After a response (Doc.27), a traverse (Doc.39), and supplemental pleading (Docs.45, 48), the Court denied the petition on the threshold question of timeliness (Docs.52, 53) as well as the following Rule 59(e) motion (Docs.54, 55, 56). Christeson appealed (Doc.57),

and the court of appeals denied a certificate of appealability (Doc.61; Court of Appeals No. 07-1905).

Seven years later, secondary counsel filed a "Notice by Friends of the Court of Petitioner's Need for Substitution by Conflict-Free Counsel" (Doc.62), that the Clerk renamed a "Motion" (Docket entry 62). Fed.R.Civ.P. 7(b). After briefing by original counsel (Doc.73), respondent (Doc.76) and secondary counsel (Doc.77), the district court denied the request for appointment of substitute counsel (Doc.78). A notice of appeal was filed by secondary counsel (Doc.83), and the Court of Appeal dismissed it on October 15, 2014, due to secondary counsel's lack of standing. While the appeal was pending, the Court denied a second motion to substitute due to the lack of jurisdiction (Doc.86). The Court denied third motion to substitute due to the lack of jurisdiction or lack of merit (Doc.92). On October 21, 2014, the court of appeals granted permission to file the current motion.

Also pending before the Court is original counsel's motion for leave to file a motion under seal (Doc.87), the topic of which is unknown. Original counsel has also filed a motion for stay of execution in *Zink v. Lombardi*, No. 14-2220 (8th Cir. Oct. 21, 2014).

## Statement of the Case

Giving rise to the habeas litigation is Christeson's conviction in the Vernon County Circuit Court. Christeson raped Susan Brouk. Afterwards,

2

Christeson and co-defendant Jesse Carter forced Brouk and her children into Brouk's car and drove them to a nearby pond. They forced Brouk to the bank of the pond. Christeson kicked Brouk below her ribs, and she collapsed. With his foot on her mid-section, Christeson cut Brouk's throat. She bled, but did not die immediately. She told Adrian and Kyle, her children, that she loved them. Christeson cut Kyle's throat twice. He then held Kyle under the pond water until Kyle died. Christeson then pressed down on the throat of Adrian until she suffocated. Carter pushed her body into the pond too. While Brouk was still alive, but barely breathing, Christeson and Carter threw her into the pond on top of her children's bodies.

The State charged Christeson with three counts of first-degree murder, and the jury found him guilty and returned death sentences. The Missouri Supreme Court affirmed the convictions and sentences, *State v. Christeson*, 50 S.W.3d 251, 257-60 (Mo. banc 2001) (full statement of facts), as well as the denial of post-conviction relief, *Christeson v. State*, 131 S.W.3d 796 (Mo. banc 2004).

## Reasons to deny the Motion

In deciding a motion to substitute counsel, the Supreme Court held that a court should look to the "interest of justice." *Martel v. Clair*, 132 S.Ct. 1276, 1284-87 (2012). It is a context-specific, case-by-case test. *Id.* at 1287. One factor to consider is the reason for the substitution. Another factor is the

3

timeliness of the request. *Id.* at 1286-7, *citing inter alia Hunter v. Delo*, 62 F.3d 271, 274 (8th Cir. 1995). Finally, in *Martel*, the Supreme Court found that no new attorney was needed because further motions in the district court were futile. *Id.* at 1289.

Originally, this Court did not substitute secondary counsel as counsel for Christeson—the relief requested by Christeson (Doc.64, p. 9)–because Christeson resided in Missouri and secondary counsel were from out-of-state; thus, it would not be in Christeson's best interest to be represented by attorneys from New York and Pennsylvania (Doc.78, p. 1, quoting Doc.63).

The fourth motion does not purport that there is new information relevant to the district court's earlier ruling. To the contrary, the fourth motion confirms that secondary counsels' offices are located in New York and Pennsylvania (Doc.100, pp. 6, 13). The new evidence suggested by the fourth motion (Doc.100, pp. 10-11) is not new evidence that would affect the district court's decision.

\* \* \*

The essence of secondary counsel's claim is that the federal court should allow Christeson to litigate in a Rule 60(b) motion an allegation that there should have been equitable tolling before the August 5, 2005 filing of the original habeas petition because he received ineffective assistance of habeas counsel (Doc.62, pp. 22-31, Doc.100, p.13). Christeson continues by

4

suggesting that original counsel cannot assert equitable tolling due to a conflict of interest; thus, there is reason to substitute counsel. This contention fails for a myriad of reasons.

First, a claim of ineffective assistance of habeas counsel is not a ground for relief. 28 U.S.C. § 2254(i). As in *Martel,* the Court should decline to substitute counsel because there is no legitimate reason for substitution. *Martel,* 132 S.Ct. at 1286-7.

Second, the Supreme Court acknowledged "equitable tolling" in 2010 as a means of redeeming a petition that violated the statute of limitations. 28 U.S.C. § 2244(d); *see Holland v. Florida,* 560 U.S. 631 (2010). Equitable tolling was available to a habeas petitioner within the circuit well before 2010. *See Kreutzer v. Bowersox,* 231 F.3d 460 (8th Cir. 2000). Under *Kreutzer*, the offender must show an extraordinary circumstance beyond an offender's control made it impossible for him to file a petition on time. *Id.* at 463. Now under *Holland*, the offender must show more. He must show that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented his timely filing. 560 U.S. at 649, *citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Under both *Holland* and *Kreutzer*, simple attorney confusion about the due date of the petition is insufficient to warrant equitable tolling. "Further, counsel's failure to recognize the importance of the one-year statute of

5

limitations in § 2244(d)(1) does not necessarily invoke the equitable tolling doctrine. We agree with those courts that have found that counsel's confusion about the applicable statute of limitations does not warrant equitable tolling." *Kreutzer v. Bowersox,* 231 F.3d at 463. The *Holland* Court reinforced this approach. "We have previously held that "a garden variety claim of excusable neglect"… such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline…does not warrant equitable tolling." *Holland*, 560 U.S. at 651-2; *see Lugo v. Sec'y*, 750 F.3d 1198, 1209 (11th Cir. 2014) (rejecting attorney negligence or misconduct as basis for equitable tolling).

The court of appeals applied *Kreutzer* and *Holland* as well as *Lawrence v. Florida*, 549 U.S. 327 (2007) in *Rues v. Denney*, 643 F.3d 618 (8th Cir. 2011), and determined that alleged attorney error in the calculation of the due date was not an extraordinary circumstance that could be a foundation for equitable tolling.

> The district court cited *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000) in support of the proposition that an attorney's miscalculation of a filing deadline is not an extraordinary circumstance permitting equitable tolling. The Supreme Court has since reaffirmed this principle on two occasions. *See Lawrence v. Florida,* 549 U.S. 327, 336–37, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post conviction context where prisoners have no constitutional right

> to counsel."); *see also Holland*, 130 S.Ct. at 2564 ("We have previously held that a garden variety claim of excusable neglect, … such as a simple miscalculation that leads a lawyer to miss a filling deadline, … does not warrant equitable tolling … [absent additional facts of] far more serious instances of attorney misconduct." (internal citations and quotation marks omitted)). We find Rues' counsel's miscalculation of his filing deadline is a "garden variety claim" of neglect and does not warrant equitable tolling. Thus, as Rues filed his petition on May 20, 2009, he clearly missed the May 6, 2009 filing deadline established by § 2244(d)(1)(A).

*Id*. at 621-2. Similarly, Christeson could not assert attorney error or "ineffective assistance of habeas counsel" as a basis for equitable tolling in either the earlier habeas proceeding or today; thus, Christeson's contention that original counsel suffers from a conflict of interest is erroneous. Indeed, to the contrary of Christeson's assertion, it was reasonable for original counsel not to assert equitable tolling, given the obstacles it faced, then and now. As in *Martel*, the Court should decline to substitute counsel because there is no legitimate reason for substitution. *Martel*, 132 S.Ct. at 1286-7.

Third, even if "ineffective assistance" of habeas counsel could warrant equitable tolling, which it does not, original counsel were not "ineffective" under *Strickland v. Washington*, 466 U.S. 668 (1984). Original habeas counsel deliberately chose August 5, 2005, as the date for filing the federal habeas petition (Doc.39, pp. 8-11; Doc.45, p. 4; Doc.51; Doc.54; Doc.73, pp. 5-8;

7

Doc.75, p. 3; Doc.76, pp. 2-4). Original counsel's reading of 28 U.S.C. §2244(d)(i), along with the cases construing this statute, gave them a reasoned basis for choosing the date to file the petition (Doc.39, *citing Carey v. Saffold*, 563 U.S. 214 (2002); *Clay v. United States*, 537 U.S. 522 (2003); *Duncan v. Walker*, 533 U.S. 167 (2001); *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003) and Doc.54 *citing Carey v. Saffold, supra; Curtiss v. Mount Pleasant Correctional Facility,* 338 F.3d 851 (8th Cir. 2003); *Williams v. Bruton*, 299 F.3d 981 (8th Cir. 2002). Counsel's theory allowed Christeson the full benefit of the one-year period and a timely filing of the petition. While the theory was ultimately wrong, that judicial determination does not retroactively make original counsel's behavior unreasonable. Such conscious decision-making by counsel was reasonable, as articulated by counsel. And as such, it is not a basis for a finding of ineffective assistance. *See id.* at 690-91; *Coleman v. Thompson*, 501 U.S. 722 (1991).

Fourth, the premise of Christeson's contention is wrong. Christeson contends that original counsel suffered from a conflict of interest because original counsel cannot assert their "ineffectiveness" as a basis for equitable tolling. Generally, "original counsels" can and do assert equitable tolling while representing their clients. *See Kreutzer v. Bowersox*, 231 F.3d at 463; *Barnett v. Roper* 2008 WL 699095, at * 17-19 (8th Cir.) (Barnett's Reply Brief). Moreover, a claim that original counsel suffered from a conflict of

8

interest does not warrant substitution of counsel. *See Lambrix v. Sec'y,* 756 F.3d 1246, 1256-7 (11th Cir. 2014). As in *Martel*, the Court should decline to substitute counsel because there is no legitimate reason for substitution. *Martel*, 132 S.Ct. at 1286-7.

The second *Martel* factor is the timeliness of the motion to substitute. 132 S.Ct. at 1286-7. The 2014 "Notice by Friends" was filed seven years after court of appeals dismissed Christeson's appeal in 2007 (Doc.62). It was not timely filed, and that would have been a sufficient basis to deny the motion. The lack of timeliness would also be a reasonable basis to deny any request for Rule 60(b) relief. Fed.R.Civ.P. 60(c). The second and third motions to substitute were pending during periods when the Court did not even have jurisdiction (Doc.86, 97). In the fourth motion Christeson suggests that he was unaware that his habeas litigation was over seven years ago (Doc.100 p. 12). The record disproved this suggestion. Secondary counsel had informed original counsel that Christeson was informed many years ago that his federal habeas petition had been dismissed, and Christeson was aware of ongoing proceedings in his case (Doc.73, p. 5)[1]. Christeson's awareness was

---

[1] Original counsel made multiple appropriate filings in Christeson's direct appeal, filings in opposition to the State's efforts to obtain an execution date (Doc.76-1). Separately, Christeson intervened as a plaintiff and was represented by Mr. Butts in *Clemons v. Crawford*, No. 2:07-CV-4129-FJG (W.D.Mo.) (Doc.76-2). Christeson joined over a dozen other Missouri death row inmates who unsuccessfully challenged the implementation of the

understandable because of efforts by original counsel to keep Christeson informed of the status of his habeas litigation (Doc.73, pp.10-12), including a meeting with Christeson in June 2007, shortly after the Court's dismissal of the original appeal (Doc.73, p. 12). Given Christeson awareness of the original habeas litigation, he has not filed a motion to substitute counsel timely.[2]

The final *Martel* factor is whether further litigation would be futile with new attorneys. *Martel*, 132 S.Ct. at 1289. The answer to that question is yes. The sole basis given this Court is that new attorneys could attempt a Rule 60(b) motion asserting equitable tolling to overcome the untimeliness of the federal petition (Doc. 62, p. 22-31, Doc.100, p. 13). As noted earlier, that assertion is meritless for multiple reasons. Accordingly, the district court should decline to substitute counsel to pursue a futile motion.

---

Missouri protocol. *Clemons v. Crawford*, 585 F.3d 1119 (8th Cir. 2009). Christeson was also an intervening plaintiff and represented by Mr. Butts in *Ringo v. Lombardi*, No. 2:09-CV-4095-NKL (W.D.Mo.) (Doc.76-3). The court of appeals eventually dismissed that litigation as moot. *Ringo v. Lombardi*, 677 F.3d 793 (8th Cir. 2012). Christeson, represented by Mr. Butts, was and continues as a plaintiff in the *Zink* litigation. No. 2:12-CV-4209-BP (W.D.Mo.) (Doc.76-4) Christeson was also a plaintiff in *Middleton v. Mo. Dep't of Corrections* (Doc.76-5). These actions by original counsel after the federal habeas litigation concluded were reasonable.
[2] The untimely nature of the fourth motion is also highlighted by the record. Secondary counsel waited thirty-two days after the order before filing a notice of appeal (Doc.83). Christeson recognizes the untimely nature of the motion when he requests a stay-of-execution (Doc.100, p. 13).

The fourth motion asserts there is new evidence (Doc.100, pp. 10-12). Christeson does not explain to the Court how the putative new evidence, alleged injuries from a 2000 assault of Christeson, would affect the district court's consideration of any of the three *Martel* factors. Even if Christeson showed that he has difficulty remembering attorney names, dislikes watching Jeopardy and the like (Doc.100 citing Motion to Remand; Motion to Remand pp. 6-8), that does not render the untimely federal habeas petition timely. Perhaps the implicit argument is that there should have been equitable tolling due to Christeson's mental state in 2004-05. The argument fails legally and factually.

Legally, Christeson was represented by counsel in 2004-5, when he filed his untimely habeas petition. Christeson does not assert that his mental state affected the filing of the habeas petition on August 5, 2005. As noted earlier, the filing occurred as a reasoned decision by original counsel. In his Motion to Remand, Christeson cited four cases for a proposition that mental impairments may justify equitable tolling to redeem an untimely petition (Motion to Remand, p. 14). But those cases, *Davis v. Humphreys*, 747 F.3d 497, 499-500 (7th Cir. 2014); *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011); *Bills v. Clark,* 628 F.3d 1092, 1097 (9th Cir. 2010)*; Riva v. Ficco,* 615 F.3d 35, 40 (1st Cir. 2010), involved an untimely filing by a pro se offender, not one who is counseled. *See Ryan v. Gonzales*, 133 S.Ct. 696, 703

11

n. 6 (2013) (distinguishing cases where petitioner is represented by counsel from those where he is not). Legally, Christeson's contention is meritless.

Factually, Christeson's contention does not warrant a remand. Christeson was competent for trial. At the penalty phase, Christeson's expert, Dr. Draper, did not testify about any mental disease or defect she observed in him (Tr. 1659). Christeson filed a timely post-conviction relief motion under Rule 29.15. *See Christeson v. State*, 131 S.W.3d 796, 798 (Mo. banc 2004). At the post-conviction proceeding, the evidence Christeson presented showed no mental impairment (Exhibit A, pp. 140-7). While he alleged that he suffered from congenital brain damage, he offered no evidence to support the contention at the Rule 29.15 hearing. (Exhibit A, p. 160).

Further, the appellate-court Motion to Remand anecdotes related by Burgdorf, *Burgdorf v. State*, 298 S.W.3d 578 (Mo. App. S.D. 2009) (upholding second-degree murder conviction), French and Harrison, *State v. Harrison*, 220 S.W.3d 827 (Mo. App. W.D. 2007) (upholding convictions for six sex offenses), do not demonstrate a mental disease or defect that rises to a level of incompetency that could conceivably support equitable tolling. Lastly, even if the allegations by these inmates about Christeson were true in 2014, the relevant inquiry is not 2014, but 2005, the year the statute of limitations expired. Burgdorf, French and Harrison offer no information about Christeson's mental status at the relevant time.

Lastly, Christeson complains about the "predatory environment" at the Potosi Correctional Center (Motion to Remand, p. 8, Doc.100, pp. 11-12). The allegation is legally and factually meritless. Legally, if the allegation were true, it does compel substitution of secondary counsel. Christeson does not suggest what effect the truth of the allegation would have on the substitution of counsel or equitable tolling.

Factually, Christeson's exposure to a "predatory environment" began earlier than his admission to the Potosi Correctional Center when Christeson, as the predator, sexually molested a youth (Exhibit A, pp. 141-2). Additionally, at the penalty phase of trial, the jury learned about Christeson's rape of his cellmate Mike Wagner. Wagner testified that in February and March of 1999, he shared a cell with Christeson, and about four days before Mr. Wagner's release from jail, Christeson passed him a note that said Christeson would have someone wait outside of the 3M plant where Mr. Wagner's father worked if Mr. Wagner did not do what Christeson said (Tr. 1547-49). Christeson hung blankets from the bunk above his so that no one could see into his bed (Tr. 1550). Christeson told Mr. Wagner to come onto his bed and play cards with him, and then Christeson forced Mr. Wagner to perform oral sex on him (Tr. 1549, 1551). On two other occasions, Christeson sodomized Mr. Wagner by putting his penis into Mr. Wagner's

13

anus (Tr. 1552). Mr. Wagner only complied because he feared for his father's safety (Tr. 1552, 1554).

Mr. Wagner was released from jail, but did not immediately tell anyone about the sodomy because he was afraid for his father (Tr. 1554). Mr. Wagner eventually told his mother, who had noticed blood in his underwear ever since he came back from jail and had seen his rectum bleeding two days after his release, and she took him to Dr. John Loney, who found a tear in Mr. Wagner's rectum (Tr. 1554, 1564-65, 1567, 1585). Cellmate Robert Milner also testified that on two nights, he woke up hearing voices coming from Christeson's bunk saw something bumping the blankets, and saw Christeson and Mr. Wagner were in Christeson's bed (Tr. 1572-74). Christeson's complaint about the "predatory nature" of confinement rings hollow in light of the record. Additionally since Christeson's arrival at the Potosi Correctional Center, his involvement in creating a predatory environment continues as evidence by the multiple conduct violations he has received (Exhibit B).

## Conclusion

Christeson does not show a legitimate basis for substitution of counsel. The Court should deny Christeson's motion.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

\s\ Stephen D. Hawke
STEPHEN D. HAWKE
Assistant Attorney General
Missouri Bar No. 35242

P. O. Box 899
Jefferson City, MO 65102
(573) 751-3321
(573) 751-3825 FAX
stephen.hawke@ago.mo.gov
Attorneys for Respondent

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system. I further certify that some of the participants in the case may not be CM/ECF users, in those instances, I have mailed the foregoing document postage prepaid, this 22 day of October, 2014, to:


\s\ Stephen D. Hawke
Stephen D. Hawke
Assistant Attorney General